## JAMES LINDSAY *vs.* PETER SPRINGER.

A *parol* agreement fixing a dividing line of lands, and ascertaining its position on the ground; *with possession immediately following,* is conclusive on the parties, and cannot be controverted.

Such an agreement is not within the statute of frauds.

THIS was an action of trespass quare clausum fregit. On a dispute between the parties concerning a dividing line of their lands, they employed a surveyor, who surveyed both their farms, and found a vacant strip about sixteen feet wide lying between them, not covered by the lines of either. They agreed to divide this strip; found the centre; together planted a stone, and moved their fences on the line so fixed. They held thus for eleven years; though it was proved

that the defendant soon after this adjustment of the line said the surveyor had made a mistake, and that he would not abide by it, but would move the fence back again when it became necessary to reset it.

*Whitely*, for plaintiff.—Where the owner of a tract of land by agreement recognizes a boundary or line, it is conclusive against him ; even though the lines of his property go beyond it. The acts and declarations of parties as to lines or boundaries may control the lines of the deeds. (7 *Cow. Rep.* 761 ; 6 *Wend. Rep.* 467 ; 12 *Ibid* 127 ; 4 *Wheat Rep.* 517 ; 7 *Johns. Rep.* 245.)

*Gray* and *Bayard.*—The cases cited are all cases of long acquiescence which presumes a prior settlement of the line. But to say that a mere declaration fixing a boundary shall transfer and convey title, is in conflict with the statute of frauds. A party can no more convey a part of his land thus by parol than he can convey the whole. (6 *Wend. Rep.* 469.)

*Mr. Whitely* replied : and the Court charged the jury : That an express parol agreement fixing the dividing line, followed by immediate possession, would bind the parties; that acquiescence was merely evidence of an agreement, and must therefore be of some considerable continuance ; but, if an agreement be proved, it binds at once.

Verdict for plaintiff; and, on motion, rule to show cause why the verdict should not be set aside and a new trial had, for misdirection on this point.

*By the Court:*

Booth, *Chief Justice.*—This was an action of trespass quare clausum fregit. The plaintiff and defendant were the owners of adjoining tracts of land; and it appeared that differences had existed respecting the true location of the division line. Early in the year 1834, the defendant became the owner of the tract now held by him, and immediately went into the possession of it. In the summer of that year, the plaintiff and defendant agreed by parol, to establish their division line. For that purpose, they called a surveyor to assist them ; who, after surveying, in the presence of the parties and others, according to the respective title deeds, was unable to make the lines of the two tracts meet. The parties then agreed to make an equal partition of the space not embraced within the limits of their respective deeds; and accordingly run a line, on which they set stakes, and placed a large stone, which was dug up a few feet distant on the plaintiff's side of the line, and was said to have been a

boundary for the two tracts.   Both parties then called all persons to witness, that the line so indicated by the stakes and stone, they mutually established as their division line.   One witness testified, that about a month after the division line was established, the defendant said he regretted he had made the agreement, and intended to compel Lindsay to move the fence back on his own land.   Both parties however acquiesced in the establishment of the division line, and held possession up to it, for upwards of eleven years; the plaintiff having planted a thorn hedge upon it and kept up his fence.   In the autumn of 1845, the defendant without notice to the plaintiff, cut down his hedge and fence; for which trespass, the present action was brought.

Upon these facts, and under the charge of the court, the jury found a verdict for the plaintiff.   The present rule was obtained on behalf of the defendant, on the ground of a supposed misdirection of the court in that part of the charge, in which it is stated as a principle of law; that if the owners of two adjoining tracts of land, having differences respecting the location of their division line, make an express agreement, although by parol, to settle the line; and for that purpose take with them a surveyor, with whose assistance they locate and establish a line as the dividing line of their respective tracts of land, and each immediately takes and holds possession up to it; both are concluded from afterwards controverting it.

At the hearing of the rule, the counsel for the defendant contended that the principle was laid down too broadly, and the law mis-stated: 1st. Because it excluded from the consideration of the jury, all evidence which tended to show a mistake in fixing the division line; particularly the fact, that the large stone which was dug up, was reputed to have been a boundary for the two tracts.   And although it is well settled, that a contract or agreement founded in mistake or ignorance of material facts, will not be enforced either at law or in equity; yet the principle announced by the court precludes a party from showing a mistake of fact, and the jury from considering the evidence of it, if offered.   2d. Because the establishment of a boundary line under a mere parol agreement, is not conclusive, unless the parties have acquiesced in it, for a period of twenty years. 3d. Because the court gave to the parol agreement and to the line which was fixed by virtue of it, greater force and effect, than 'our act of assembly for marking and bounding lands, (*Dig.* 82, *sec.* 5,) gives to the written agreement of parties for settling the location of their lands, and to the plot of the land, whose location is settled by

the parties, pursuant to such agreement. For although the agreement and plot by the consent of parties, be recorded under the direction of the court, the record is not conclusive, except in case no action is brought within seven years next after recording the proceedings, to call in question the location of the lands.

1st. The first objection is in itself a fallacy. It is true, that where a contract is made, or an act done, under a mistake or ignorance of material facts, the party may have relief at law or in equity. The reason is, that it was not his intention to make such contract, or do such act; and as his assent never was given; the contract, therefore, is not valid, nor does the act bind him. Upon this principle, a court of equity gives relief in cases of written contracts, where a mistake is clearly made out by parol evidence; also in the case of a settled account, where specific errors are plainly shown. So too, an action for money had and received, lies to recover money paid under a mistake of facts: and where money has been erroneously overpaid, arising from a clear mistake in the settlement of an account, it may be recovered back in assumpsit. But if in consideration of the uncertainty of the facts of the case, the difficulty in ascertaining them, and for the purpose of avoiding a suit, the parties agree to settle the matter in controversy, and afterwards carry their agreement into execution, both shall be bound by it; because such is their contract, to which they have mutually assented. And although facts may afterwards appear to one of the parties, which had he known at the time of the agreement, he would not have entered into it; yet he shall not be permitted on that account to open the controversy; because his uncertainty about the true state of the facts, was the very reason why he made the compromise.

2d. It is said on behalf of the defendant, that the establishment of a boundary line under a parol agreement, is not conclusive, unless it has been acquiesced in by the parties, for a period of at least twenty years. If a written agreement were made, under circumstances similar to those which existed in the present case, to establish and abide by a boundary line, which is immediately located by the parties, pursuant to such agreement; no doubt the parties would be bound by it, as well after the lapse of one year, as of twenty years. But as the contract in such case is not required to be in writing, (*Boyd's Lsssee vs. Graves,* 4 *Wheat.* 517; *Kip vs. Norton,* 12 *Wend.* 130,) an express parol agreement fairly made in a like case, by virtue of which the boundary is established and immediately followed up by possession, would have the same effect, of precluding the

parties from afterwards controverting it. The lapse of twenty years is merely matter of evidence to establish a particular fact. Thus the adverse and uninterrupted possession of land for that period, is conclusive evidence at common law, of a grant; and so too, the acquiescence in a boundary line for the same length of time, by the parties interested, is conclusive evidence of an express agreement to establish such line and to adhere to it; although in point of fact, there was neither a grant in the one case, nor an express agreement in the other. (*Rockwell* vs. *Adams*, 7 *Cowen* 762; *Same*, 6 *Wendell* 469; *Kip* vs. *Norton*, 12 *Wendell* 130.) But if a grant under seal could be shown; or an express agreement although by parol, and the location of the line pursuant to it, could be clearly proved by positive evidence, no resort would be had to presumptive evidence. When proved by either, the parties are conclusively bound by it. But the argument for the defendant makes the effect of an agreement to depend on the nature of the evidence offered to prove it; and thus gives to it a conclusive force, when shown by presumptive or circumstantial evidence; and denies to it the efficacy, when established by direct and positive proof.

3d. The principle decided by the court, does not conflict with the fifth section (*Dig.* 82,) of the act for marking and bounding lands. The first part of the section has reference precisely to such a case as the present. It declares, that where the parties interested, fairly agree to settle the bounds, line or lines of any tract of land, and do actually fix and settle them; the commissioners, under any commission to mark and bound the land, shall have no power or authority between the same parties, or those claiming under them, to vary from the lines so settled or agreed upon. Whether settled under a written or parol agreement, the lines conclude the parties and commissioners. They must be conformed to, and are thus made by the law, to control both the courses and distances in the title deeds; although the form of the oath or affirmation taken by each commissioner, before proceeding to execute the commission, is, "that he will settle and adjust the location of the land mentioned in such commission, most agreeably to the true original location thereof."

The latter part of the fifth section does not relate to the case of parties by their own direct and immediate act, settling and establishing the lines of their lands, as is assumed in the argument for the defendant. That case was already provided for, in the former part of the section. The latter part referred to in the argument, manifestly relates to cases where the parties cannot agree upon the true

location of their lands; and, therefore, authorizes them to enter into an amicable agreement, which must be in writing, to have the location ascertained and settled by third persons; and thus to avoid the expense of adversary proceedings by commission to mark and bound the lands. The written agreement is in the place of a commission; and the arbitrators are substituted in the place of commissioners. The agreement, the settlement by the arbitrators, and a plot of the land so settled, may, by the consent of the parties interested, be recorded, under the direction of the court, as is mentioned in the third section of the act, respecting the return of the commissioners. By a reasonable construction of the act, the consent of the parties ought to appear in their written agreement; and not depend, after the settlement of the lines by the arbitrators, upon the humor or caprice of either party. If it were otherwise, the object and intention of the latter part of the section would be defeated; for in every case where the location of the land was not according to the notion or whim of a party, he might withhold his consent, and thus render all the proceedings a nullity. The consent of the parties expressed in their written agreement, would not preclude either of them from making any such legal objections before the court, founded upon any misconduct of the arbitrators, against the recording of the agreement, the award and plot, as may be made under the third section of the act, in the case of a return by commissioners. If the objections should be overruled, the court would order the agreement, award, and plot, to be recorded. When recorded, the section declares, they shall have the same effect and consequences, as if the location of the land had been settled by commissioners. An action, therefore, as is provided in the fourth section, may be brought at any time within seven years next after the recording of the proceedings, to call in question the marking and bounding of the land by the arbitrators; but if no action be brought within that period, the record becomes conclusive evidence of the original location.

The court perceive no ground to disturb the verdict, and therefore, the rule for a new trial is discharged.

*Whitely,* for plaintiff.

*Gray* and *Bayard,* for defendant.