## F. EBERLING v. F. WEYEL.

### (No. 3512.)

SUIT FOR DAMAGES TO LAND — PLEADINGS.— Where plaintiff's petition prayed for damages for trespass upon his land which adjoins defendant's and that defendant be restrained therefrom, and defendant answers denying the trespass and claiming the land as his own, whatever the character of the suit as first brought, it is by these pleadings turned virtually into a suit for

the determination of disputed boundaries, and the pleadings authorize a judgment for land as well as a money compensation for damages.

Practice — Judgment.— Where a case is tried without the intervention of a jury, the inquiry of the supreme court must be restricted to ascertaining whether, upon the whole case, as presented to the judge below, and set out in the statement of facts, there is testimony to warrant his findings, not what their views of it might be.

Appeal from Gaudalupe county.　Opinion by Quinan, J.

Statement.— At the December term, 1875, of the district court of Guadalupe county, appellee brought suit against appellant for damages for trespass upon his (appellee's) land, and taking timber and rock therefrom, and building a pen or house thereon, etc., by which he was damaged in various sums, to wit, $400 by treading down the grass, tearing up the soil, cutting down the trees and building the pen or house; and $15 by hauling off his rock. Further vindictive damages were averred, but seem not to have been considered by the court.

Appellee averred that he and appellant owned contiguous tracts of land; had agreed upon and established a division line between the tracts; and in 1875, and after the divisional line was established, the trespasses were committed and the damage done by appellant; and averred that unless restrained appellant would continue to trespass upon appellee's tract of land. He prayed for judgment for damages, and that appellant, after final hearing, be restrained from further trespass on his land.

December 10, 1875, appellant demurred to appellee's petition, pleaded not guilty, and answered that he was seized and possessed of all the tract of land between that purchased by appellee and others of Schneider, and original northeast boundary line of survey No. 91, in name of Josefa Leal; and set out by metes and bounds what part of the Leal survey he claimed. Pleaded that he has been in possession three and five years; that about the dates mentioned

in the petition appellee has trespassed upon him on the land, had plowed up the land, assaulted him, etc., to his damage $2,000, yet he (appellant) remained in possession, and prayed for judgment that appellee take nothing by his suit; that he have judgment for his land quieting his title; that appellee be restrained from further trespass on same, for damages and costs, and for general relief.

May 11, 1876, appellee amended his petition, averring an agreement between appellee and appellant that the divisional line between their tracts of land should be located and run out by A. M. Erskine, county surveyor of Guadalupe county, and after being so run should be the divisional line dividing the tracts of appellee and appellant; averring that this divisional line "begins at a stone mound from which a mesquite tree four inches in diameter bears south sixty and one-half degrees, west twenty-one and one-half varas; thence north thirty degrees, west one thousand five hundred and twenty-seven varas, to the northwest line of survey No. 91."

May 12, 1876, a jury not being demanded, the cause was submitted to the court on the law and testimony, without argument. The court found that the law was for appellee, and adjudged that he recover from appellant $20 and costs, and decreed that the divisional line between the tracts of land of appellee and appellant was as per their agreement the same as designated in the amended petition of appellee.

The defendant moved for a new trial, which was overruled. The case is brought here by Eberling by writ of error.

The assignments of error are:

1. The court erred in rendering judgment for the plaintiff, F. Weyel.

a. Because the plaintiff, who, in a personal action, merely sought a money compensation for alleged trespasses, obtained not only a judgment for money, but for land, too, without having asked for such relief, and such relief being inconsistent with his action.

b. Because the court adopted the survey of the county surveyor, Erskine, based upon the impossibility that the patented survey No. 91 contained within its limits vacant public domain subject to appropriation by location by plaintiff, Weyel.

c. Because the defendant, Eberling, was not estopped from claiming up to plaintiff, Weyel's, line, as established by the surveyors, James P. Hector and Charles P. Smith.

d. Because the defendant, Eberling's, deed and purchase from Robert Schneider, Mary and Daniel Holzbauer and Eliza and Henry Franz acting by W. D. Griffith, their attorney, dated August 20, 1875, recorded in Book N., pages 175, 176, could not be wholly disregarded and treated as wholly void or ineffectual by the court.

e. Because plaintiff's proof was insufficient even to entitle him to a money judgment for the alleged trespasses, having totally failed to prove possession, the evidence being that the defendant, Eberling, was the party in actual possession under a claim of right to the soil.

2. The court erred in refusing to grant a new trial.

OPINION.— The first objection to the judgment cannot be maintained. The plaintiff prayed that defendant might be enjoined and restrained from trespassing upon his land. The defendant answered denying the trespass, claiming the land upon which the trespass was alleged to have been committed as his own, and prayed judgment for his land, quieting his title, and that plaintiff be enjoined from trespassing upon his land.

To this answer the plaintiff replied that plaintiff and defendant had agreed upon a division line between their lands, which were contiguous, describing the line run and agreed upon. Whatever the character of the suit as first brought, it was, by these pleadings, turned virtually into a suit for the determination of disputed boundaries. The defendant made this the issue. He asked to be quieted in his possession. The effect of the decree is to settle the bound-

aries and quiet the title to the lands, and the defendant cannot complain of this action of the court which he himself invoked, because it may not be quite as favorable to his case as he had anticipated. There is nothing inconsistent or foreign to the claim made by the plaintiff in his petition in the judgment rendered. A prayer that defendant be enjoined from trespassing upon his land, of itself suggests the propriety of determining its boundary, and, when supported by the pleadings of the defendant in this case, fully warranted the judgment as rendered.

The other errors assigned resolve themselves into this one proposition, whether the testimony was sufficient to warrant the judgment of the court. The case was tried without the intervention of a jury. There is nothing in the record to indicate upon what peculiar views of the testimony he based his conclusions, or what his views of the law of the case were in reference to the several propositions of the plaintiff in error in his assignments. We cannot say that he looked upon Erskine's report as based upon an impossibility, or whether he thought Eberling estopped or not estopped from claiming up to Weyel's line according to Hector or Smith's survey, or whether he disregarded wholly Eberling's purchase. It has often been said that where a cause has been submitted to the judge the presumption will be that he gave weight only to the testimony as it deserved to have weight; that he rejected what was immaterial or incompetent, and gave proper consideration to that which was relevant and pertinent to the case.

Our inquiry, then, upon these assignments of error, must be restricted to ascertaining whether, upon the whole case, as presented to the judge, and set out in the statement of facts, there is testimony to warrant his finding; not what our views of it might be, for we did not hear the witnesses, nor to us is there confided the task of judging of their credibility or the weight which should be given to the testimony. It must be a very clear case in which a revis-

ing court would undertake to set aside the judgment of the judge or jury upon the facts.

This was a case of disputed boundary. The lands of Weyel and Eberling adjoined. The controversy was as to the location of the line between them. The tract of land formerly belonging to Bracken was divided into two equal portions; one to the legatees and one to the heirs. Weyel claims under the legatees; Eberling under the heirs. The difficulty in determining where the dividing line was resulted from uncertainty as to where the beginning corner of the survey 91 was. Several surveys had been made and the several surveyors differed. But the county surveyor, Erskine, testified on the trial that he had found this corner; that he had run this division line between the respective tracts in accordance with it, and that the parties agreed and assented to it.

Surveying Weyel's land from the west, and surveying Eberling's from the east, measuring the distances called for in their field-notes, the surveys did not meet by some sixty or sixty-two varas, and this distance, by agreement, he divided between them. If the lands were surveyed with absolute accuracy the surveys would meet. We have very little doubt, as the appellant's counsel says in his brief, "that the bottom facts of the case" are that the original division of this Bracken tract was actually made equal between the heirs and legatees; that the survey for the legatees was begun from the westward; that for the heirs from the eastward; that they adjoin; and the line run by Erskine was the exact half way between the eastern and western line, and consequently the true boundary between the tracts. There was no vacancy between them, and if his claim would not make the tracts meet, it was his duty to project the lines to that end, dividing the space equally. Equality is equity.

Other surveyors who surveyed the land differed widely from Erskine, but we believe from the evidence that Ers-

kine's line is the exact division line between the parties, and that the judgment, if founded upon that, is not without evidence to support it independent of any agreement. But the agreement between the parties, we think, would warrant the judgment.

There was testimony to show that the line was run by agreement and direction of the parties by the county surveyor, Erskine, for the purpose of settling and determining what had been in dispute; was agreed upon and acquiesced in by them at the time, and for more than a year afterwards there was no dissatisfaction expressed on either hand. See George v. Thomas, 16 Tex., 88. It is a well-settled doctrine that the courts will not disturb parol agreements or long acquiescence in a boundary line. See Wakefield v. Ross, 5 Mass., 16; Smith v. Hamilton, 20 Mich., 433. Such agreements are not within the statute of frauds. Hoxie v. Clay, 20 Tex., 526.

The objection that the proof was insufficient to warrant a judgment for damages is not well taken. The title to the land was in Weyel and also the right of possession. He was entitled to recover of Eberling for whatever damages he had sustained from his trespass. Hillman v. Baumbach, 21 Tex., 205.

JUDGMENT AFFIRMED.