Hardin, P. J.
In 1856 the defendant purchased the premises occupied by her of one Smith Trowbridge, receiving from him a written contract to sell and convey the premises to her upon payment of the price therein named. :She immediately entered into possession of the premises covered by the contract, and cultivated and fenced the premises, including the disputed piece, claiming that the piece now in dispute was a part of the premises purchased and owned by her. _ August 15, 1865, she received a deed from Smith Trowbridge for the contracted premises. The plaintiff’s premises were acquired through a chain of title, commencing on the 10th of April, 1857, from Smith Trow-bridge. At the time of his conveyance, however, the premises were in the actual possession of the defendant,, and the parcel in question was fenced and cultivated, and *684 since the possession taken by the defendant under her contract she has claimed to hold and own the same. Her husband was a witness upon the trial and testified, viz. : “I planted that strip of land that laid right by the side of the house; I built the fence right away after I got the contract of Trowbridge in 1856; it took me two or three hours; my best recollection is that the fence was taken down about four years ago; I and my wife talked the matter over in the presence of Trowbridge, and Trowbridge says, ‘ That is right.’ He was present when the deed was given. I handed the contract back to Trowbridge after we got the deed. Mr. Trowbridge had been in the West a good many years.”
The defendant also called as a witness Julius L. Woesse, who testified that he knew the west line of Landis’ lot as it is situated, and has known it since 1851. That there was a fence between that lot and the one lying west. He was not able to state definitely how far west it was of the old house before the addition was put on. He says : 11 The old fence stood there during those years, from 1856 to 1885.” Evidence'was also given by Conrad Sipple, Jr., as to the occupation of the defendant and the location of the fence, and also by Conrad Sipple, Sr. The latter witness says: “ I remember the fence standing therebetween the lots in question here twenty-seven years; they planted grapes inside the fence.”
From the evidence which we have quoted it is not very clear when the conversation held by the defendant and her husband with Mr. Trowbridge was had. If it be assumed to have been held at the time of the building of the fence and making the enclosure of the premises in question in 1856, then, upon the assumption made apparently by both parties at the trial, that Smith Trowbridge was then the owner of the property, the conversation would seem to bear upon the question of the practical location and practical establishment of a line and the building of the fence, the occupation in accordance therewith,_ the acquiescence of Trowbridge and any other parties in possession of the premises now claimed by the plaintiff would seem to be established. A practical location of the land may be made out by evidence which shows an original consent, with acts and conduct based thereon, which imply an acquiescence and approbation of a practical location of a boundary line. Under the doctrine laid down in Swettenham v. Leary (18 Hun, 287), we think the question was presented by the evidence for the consideration of the jury as to whether there had been a practical location of the line between the two lots in accordance with the claim of the defendant.
Judge Talcott, speaking for this court in that case, said: *685 “We think also there was sufficient evidence to go to the jury on the question of a practical location of the line between the two lots. Where there has been a practical location of a line which has been acquiesced in for a sufficient length of time to bar a right of entry under the Statute of Limitations, or the erroneous line has been agreed upon between the parties claiming the land on both sides thereof, or the party whose right is to be thus barred has silently looked on and seen the other party doing acts such, for example, as erecting a building, or subjecting himself to expenses in relation to the land on the opposite side of the line, which he would not have done if the line had not been so located, as we understand the authorities, a party in occupation up to the erroneous line may defend an action to recover the land, though the line is shown to have been erroneously located. Rockwell v. Adams, 6 Wend., 467; Corning v. Troy Iron and Nail Factory, 44 N. Y., 577; Jones v. Smith, 64 id., 180; McCormick v. Barnum, 10 Wend., 104; Smith v. McAllister, 14 Barb., 434.
We think, therefore, there was evidence to go to the jury on the question of a practical location of the line between the parties to the suit or their predecessors in the title, and that it was not necessary to prove an actual agreement, but .acquiescence in the location, even if erroneous, for a sufficient length of time to bar an entry, with occupation accordingly, was sufficient.”
Following that case we hold there was a question of fact presented which should have been submitted to the jury.
Judgment reversed and new trial ordered, with costs to abide the event.
Boardman, J., concurs; Follett,J., concurs in the result.