The opinion of the court was delivered by
Duncan, J.
The errors assigned relate to the opinion of the court filed of record; and a preliminary question was made, whether the court could judicially take notice of this opinion, it not appearing by the record, to be reduced to writing, and filed of record at the request of either party. The opinion was an answer to certain points made in writing, propounded to the court for their opinion to the jury, by the defendant in error.
The act making it the duty of courts, on the request of either party, to reduce their opinion, with the reasons, to writing, and file it of record, has been found very inconvenient in practice, however beautiful in theory; and though the provision appears, on first view, very simple, yet experience has shown it to be not a little complex. It has, instead of easing the suitor, proved a source of vexation, perplexity and delay, and sometimes of actual injustice. It requires legislative interposition, either by its total abolition, or pruning many of the luxuriant branches which have grown from it, and choked the progress to the termination of controversies. The bill of exceptions, its form, its bearing, were well understood, and quite adequate to spreading on the record all legal points decided by the courts, in their instructions to juries.
This opinion is signed by the judge, with his reasons filed of record, and we cannot suppose that this was his own voluntary officious act, without the request of either party, but must presume *115 it to be his official act, done by request at the time. It matters not which party requested it. It is of record, and consequently the subject of revision. It differs, in this respect, from a bill of exceptions, which the party taking the exception may use or not, as he pleases. The statute of Westminster 2d, giving the bill of exceptions, is different in its provisions from the act of assembly. The bill of exceptions does not form a part of the record. It is tacked to it. Its authenticity depends on the acknowledgment by the judge of his seal. It is called, emphatically, his bill of exceptions ; that is, the bill of exceptions of him who takes it. Being for the benefit of the party who tenders it, remaining in his possession, it is in his breast to employ it or not. If the bill is tacked to the record, and certified by the judges below, it is then a part of the record, and comes up with it. But if it is not, then it seems necessary for the judge to come into court, and acknowledge his seal affixed to the bill. Clarke v. Russel, 3 Dall. 415. But an opinion filed, instantly becomes a part of the record, and subject to revision.
The action was replevin, for a certain quantity of slate taken out of a slate quarry, by the defendant in error, and defendant below, and manufactured by the defendant, the title in the soil being claimed by both.
There are only two questions, which have arisen, and been argued here, upon the instruction given by the District Court, in the answers to two questions proposed by the defendant in error, and to which alone the court have directed their attention.
The first was, “that if the jury believed, that the plaintiff and the guardian of the defendant, made a consentable line between the property of the defendant and the plaintiff, the plaintiff could not recover in the suit: that the line concludes the parties.” Answer. Where adjoining landholders, apprized of their rights, or to compromise doubtful rights or possessions, establish a line, which is called a consentable line, and hold accordingly, such consentable line will be conclusive.
The objection made to this is, that the court applied a principle which is good law between adults, to a case between an adult and infant, acting by his guardian, and that the infant is not bound by the act of the guardian. The question was a general one, and was answered generally by the judge. His attention was not called to any discrimination of acts by infants and adults. It was an abstract proposition, and received a proper answer. If the plaintiff had desired to have the opinion of the court, whether this consentable line wás binding on the defendant, he being an infant, and being made by his guardian, he should have desired the opinion of the court on his hypothesis. But the answer must have been the same; it must have been adverse to the plaintiff.
It is no question, it cannot be made a question, but that consentable lines, settlement of boundaries, and holding by them, would, *116 unless there was some fraud practised, undue advantage taken of the ignorance of one party, the other being conversant of the real, lines, be conclusive between persons competent to bind the rights. So I would hold, that a fair settlement, so made, by guardian, and acquiesced in by the infant holding the possession after he came of age, would amount to a confirmation, These settlements of boundaries are common, beneficial, approved and encouraged by courts, and ought not to be disturbed, though it was afterwards shown, that they had been erroneously settled, if they have been acquiesced in for a number of years. 11 Johns. 128.
The marks on the ground are frequently obliterated, and some-, times very obscurely made, of division lines; and where several adjoining tracts are surveyed at the same time, for the same person, never made at all, but depending solely on paper. Convenience, policy, necessity, justice, all unite in favour of supporting such an amicable adjustment of that which it is extremely difficult to ascertain, to a mathematical certainty. If this settlement of boundary had been made by the infant himself, it would not have been void, but voidable by him on his arrival at full age. Continuing the possession up' to the boundary, would have been a confirmation of it. In 2 Vin. 224, Cecil. & al. Earl of Salisbury, the plaintiffs, the' younger children of the Earl of Salisbury, brought a bill for the execution of a trust, under the will of their father, for raising their portions and maintenance, and prayed the trustees might be decreed to sell. The defendant, whilst a minor, desired the trust estate might not be sold, and offered to subject other lands for the better raising of the portions, so that then a sale would not be necessary. The question was, whether being a minor, he should be bound by this offer in his answer. Per curiam. We shall hold him to his offer. If he had departed from what he had offered, he ought immediately when he came of age, to have applied to the court, to have retracted his offer, and amended his answer. But when he came of age he made no complaint, either that he had been deceived or defrauded, or an improper defence made for him, (and this defence must have been by guardian,) but acquiesced in the answer to this time. This court has often decreed building leases for 60 years, when for infant’s benefit. A common recovery suffered by infant is good, and if the court are satisfied it is for the good of the infant, will take it. If an exchange is made, and infant continues in possession after he comes at age, he shall be bound by it. So where a jointure is made after marriage, if after the death of husband the wife enters, she shall be bound by it. In Sir Edward Mosely’s case, where a provision was made for his lady, in lieu of her jointure, by articles during coverture, she, after the death of her husband, entered on £46 per annum, part thereof only, and she thereby was held obliged to perform the whole articles: and the Lady Widritigton’s case was cited, *117 where she and her husband agreed to an inclosure, and she was .bound by it, even as to her jointure.
That the infant acquiescing in the settlement of boundaries after he came of age, would be bound by it, is supported in principle, by many cases both at law and equity. The act of a guardian, when a reasonable one, if acquiesced in by the infant, will have the same consequence as if done by the infant at full age: otherwise, if wantonly done by the guardian, without real benefit to the infant Pierson v. Shore, 1 Ath. 480. In Smith v. Low, 1 Atk. 490, R. L. devised some land, and houses built thereon, to his sis children. The mother, as guardian to the children, who were all infants, demised the premises on a building lease for 41 years. They all attained 21, and accepted the rent for aboye 16 years. After the youngest came of age, they brought ejectment against the lessee, who by his bill, prayed to have his lease established under the circumstances, particularly, the acceptance of rent for 16 years; the court decreed the lease to be established during the residue of the term. But supposing it not binding against him, or them who stand in his place, could the plaintiff object to it on that account? I think not, so as to make the party a trespasser, without notice of his dissent. For if an infant, or his guardian, were to surrender an unprofitable lease, and after acceptance the premises should be burnt, overflowed, or otherwise destroyed, the lessor could never §ay the surrender was void. There is no instance where the other party to a deed can object on account of in- ' fancy. Consequently the infant may let the surrender stand. If he avoids, it should be recently after his arrival at age, and this proves it to be voidable only. Zouch v. Parsons, 3 Burr. 1807. But where there has been a settlement of boundary by a guardian for his ward, acquiesced in and confirmed by the ward after his arrival at full age, and by the adult, that the infant can avoid that settlement even though the boundary was somewhat erroneous, I very much doubt. The inclination of my mind is, that he cannot. But that the adult cannot, I have no manner of doubt. The answer to the defendant’s question should have been in terms, that he could not. Of the omission to do this,- the defendant has no just cause to complain.
Of the answer to the defendant’s second question, the defendant’s complaint is groundless, if the learned judge intended to state, that the action of replevin would lie for the slates taken out of the quarry, of which the defendant was in possession under claim of title, with a settled boundary between his guardian and plaintiff, and which both-held under until the time of the supposed taking and trespass, if the plaintiff showed an original title prior to the defendant’s. It was an error, injurious to the defendant; certainly favourable to the plaintiff. A party shall not reverse a judgment for an error which is beneficial to him. Nor will a'judgment be reversed for an erroneous opinion upon an abstract question, unless *118 some injury could have arisen therefrom, to the party appealing. This court sits to give redress to persons grieved by decisions of inferior courts. 2 Hen. & Munf. 55. But taking the answer altogether, giving it a fair construction, I do not think the judge intended to put it to the jury on the question of title, but of possession, on a claim of title. For certainly, replevin is not the proper form of action to try title to land ex directo, though incidentally, title in such action may sometimes be called-in question. In Pennsylvania this action has been allowed a great sweep, and to embrace every question of property. But it is property in goods, and not in lands. It is to try the title to personal property, and not real estates. Replevin will not lie for a tract of land. Title cannot be decided in an action merely personal and transitory, no matter whether replevin, trover, or assumpsit. Nor can these actions be maintained by one not in the actual, exclusive possession, whatever his title may be against one who is in the possession, claiming right. Here the possession is not vacant, the owner of the title is in the constructive, actual possession. The reasons are fully studied in Mather v. The Ministers of Trinity Church, 3 Serg. & Rawle, 509, and Baker v. Howell, 6 Serg. & Rawle, 416. If it could lie in this case, then replevin would lie by the owner of the soil, for coals dug out of a coal mine in England, and brought to Pennsylvania, and the title to the soil in a foreign nation be tried in this transitory action. The owner of a tract of land in Clearfield county, whose timber had been tajeen by a trespasser, and sawed into boards, follows them into Lancaster county, and replevies them in the streets of the city. The doctrine of venires shows, that this cannot be the law. Anciently, a jury of one county could not try any matter arising in another county. A foreign county was almost as formidable a thing as a foreign country. If the action is personal and transitory, the venue may be laid in the county where trying; because these follow the person. But of matters arising in a foreign country or county, not transitory, but local, such as the prosecution of a title to lands, or a trespass committed on lands, where the title in solido and ex directo, is the ground of action,.there is no jurisdiction, but' in such place. But if the right to land was to become an incident in an action personal, for instance, a contract respecting the conveyance of land, mixing with the cause of action, it might be tried any where. This subject was very fully considered in the action of trespass, brought by Edward Livingston Esq. against Thomas Jefferson Esq. and a very able opinion given by C. J. Marshall, against the jurisdiction. When I speak of possession, I mean an "actual possession and occupation; not a bare solitary trespass by an intruder, but an actual, visible, notorious possession and occupancy.
The plaintiff has failed in supporting the errors assigned, and judgment must, therefore, be affirmed.
Judgment affirmed.