## JOSEPH F. SMITH v. C. A. RUSSELL AND OTHERS.

1. It is well settled that if natural or well-known artificial objects, called for in a deed or patent, be inconsistent with the courses and distances called for, the latter must be disregarded.
2. To establish boundaries, monuments and lines marked upon the ground may be identified by parol evidence. The common understanding of the neighboring community, as to the identity of such monuments and lines, is competent evidence; and the declarations of deceased persons,

possessed of information on the subject, are admissible to fix the locality of corners and lines of a survey. So also it was competent to prove that the corner in dispute had been recognized or pointed out by the adverse party as the true corner; and if it be proved that a common line between contiguous proprietors had been mutually recognized and established by them, they will be bound and concluded by it, though it be not the true original line.

3. One party litigant having read such parts of an original survey as concurred with his patent, it was not error to permit the adverse party to introduce the entire survey for the purpose of contradicting or explaining the patent.

APPEAL from Refugio. Tried below before the Hon. T. C. Barden.

The case is stated in the opinion of the court.

*William Alexander*, for the appellant. The patent to Maxey sets out, *in words*, field-notes in which there is no ambiguity.

After the title had passed to Smith as purchaser, the appellees, as owners of tracts calling for the Maxey tract, when sued for trespassing on it, attempted to collaterally impeach the Maxey patent—not by a cross-action in equity, praying for its cancellation, but by indirectly and collaterally attacking the field-notes recited in the patent.

This they cannot do. (Campbell v. Garven, 5 Ark., 485; Jennings v. Whitaker, 4 Monroe, 51; Cain v. Flinn, 4 Dana, 501; Bledsoe v. Wells, 4 Bibb, 329; Carle v. Banell, 2 Sneed, 63; U. S. v. Arredondo, 6 Peters, 691; Parker v. Claiborne, 2 Swann, 565.)

As to effect of a patent, see Brown v. Galloway, 1 Peters, C. C., 291; Dobson v. Cocke, 1 Tenn., 314; The State v. Nashville University, 4 Humph., 157; Bullit v. Banman, 5 W. & S., 150; James v. Betts, 2 Binny, 12.

If the appellees had brought an original suit in equity, to get the boundaries of the Maxey tract decreed to be different from those set out in the patent, and without praying for a cancellation of that patent, it could not have been sustained;

because equity affords no precedent for such relief. When a court of equity decrees, its aim is to do complete justice, and not merely to lay the foundation for a new suit.

The appellees are attempting, under the pretext of raising a question of boundaries, to collaterally attack and impeach a patent by proofs not of equal (record) dignity, *dehors* the patent, and leaving the patent uncancelled, which is contrary to law as well as to evidence.

They also are attempting, *in their defense to a lawsuit* and without suitable averments and prayer, to obtain a decision overruling, without cancelling, a patent—leaving it as a record to give notice of its contents to all the world; for which no precedent exists—such relief not being admissible in a direct suit in equity.

*J. F. Smith,* also for the appellant.

Smith used in evidence to the court and jury the patent to Maxey, in which the lengths of the lines were expressed in words, and the first line is one thousand and fifty-five varas long. He then used in evidence a copy of the Maxey survey from the records of the County Surveyor's office of Refugio county, and the courses and distances agreed with the courses and distances in the patent, and the length of the first line is one thousand and fifty-five varas. Smith then used in evidence a copy of the Maxey survey from the General Land Office, dated on the 5th day of August, A.D. 1858, seven years and six months after the date of the patent, and the courses and distances of this copy agree with the courses in the patent, and the first course is one thousand and fifty-five varas long. And as rebutting evidence, Smith read to the court and jury a copy of the Maxey survey, from the General Land Office, dated on the 9th day of July, A.D. 1846, and the courses and distances of this copy agree with the patent, and the first line is one thousand and fifty-five varas long.

But under the amended answer of the defendants the court permitted them to introduce in evidence to the court and jury

a photographic copy of the Maxey survey from the General Land Office, dated on the 30th day of December, A.D. 1869, which shows that the first line of the Maxey survey is only 105.5 varas long.

And upon this evidence from the Land Office, more than thirty years after the date of the survey for Maxey was made, and upon the hearsay evidence of Egery and M'Carty, the jury found the first line of the Maxey survey to be only 105.5 varas long, and the division line of the land in dispute to be as claimed by the defendants.

But to pleadings under which this evidence was given the plaintiff excepted, and objected to all parol and hearsay evidence to impeach his patent, which objections were overruled by the court, and the evidence was admitted by the court, and the plaintiff excepted.

The plaintiff then, in his motion for a new trial, repeated his objections to the evidence, but the motion was overruled by the court, and plaintiff appealed.

A patent for land is a complete appropriation of the land it covers, from its date, and by relation it goes back to the date of the location and survey, and merges all the preliminary steps by which it was acquired; and should any of these be defective or void, they are cured by patent; and the location, survey, and patent, conclude all persons whose rights to the same land did not commence before their date. And should surplus land be included in a survey, or should it have more front on navigable waters than is allowed by the directory laws, as to the mode of survey, and a patent from the proper officer, whose duty it was to adjudicate and pass upon such survey, as the law is directory only, and no penalty is annexed for non-compliance, the title so issued is good and valid, and no person has a right to complain unless he had some equity to the same land before the date of survey.

(Massey v. O'Connor, 23 Texas Reports, 240; Robertson v. Mosson, 26 Texas Reports, 248; Todd v. Fisher & Miller, 26 Texas Reports, 239; Howard v. Colquohoun, 28 Texas Reports,

145 ; White *v.* Burnly, 20 Howard, 247; Taylor & Qualls *v.* Brown, 2 Condensed Reports, 235; Newsom *v.* Pryor, 5 Condensed Reports, 206 ; Hoofnagle *v.* Anderson, 5 Condensed Reports, 271; Fletcher *v.* Peck, 2 Condensed Reports, 308, 320 ; Polk's Lessees *v.* Wendell, 4 Condensed Reports, 654 ; Arredondo *v.* United States, 6 Peters' Reports, 729, 342 ; Patterson *v.* Winn, 6 Condensed Reports, 355 ; Patterson *v.* Winn, 5 Peters' Reports, 233; Brush *v.* Ware, 15 Peters' Reports, 93 ; Preston's heirs *v.* Bonemer, 5 Condensed Reports, 184; 2 Bibb's Reports, 493 ; Blunts *v.* Smith, 5 Condensed Reports, 275.)

Mr. Chief Justice Marshall, in the case of Chinoweth *v.* Haskell, 3 Peters' Reports, page 96, says : " It is an obvious " principle that a grant must describe the land to be conveyed, " and the subject granted must be identified by the description " given of it in the instrument itself. For the purpose of fur- " nishing this description, and of separating the land from that " which is not appropriated, the law directs a survey to be made " by a sworn officer, who, at the time of making such survey, " shall see the same bounded plainly by marked trees, except " where a water-course or an ancient marked line should be the " boundary. The persons employed to carry the chain are to be " sworn by the surveyor, to measure justly and exactly, to the " best of their abilities. The description of the land thus made " by a survey is transferred into the grant. It consists of the " courses and distances run by the surveyor, and the marked " trees at the lines and corners, or other natural objects which " ascertain the very land which was actually surveyed. The " courses and distances are less certain and less permanent guides " to the land actually surveyed and granted, than natural and " fixed objects on the ground, but they are guides to some " extent, and in the absence of all others must govern us. If a " grant be made which describes the land granted by course and " distance only, or by natural objects not distinguished from " others of the same kind, course and distance, though not safe " guides, are the only guides given us, and must be used." (Stafford *v.* King, 30 Texas Reports, 257; Newson *v.* Pryor,

5 Condensed Reports, 206; Anderson v. Stamps, 19 Texas Reports, 464.)

A plat and certificate of survey annexed to a survey, and a general plan of surveys made by authority of law, is evidence to identify the land granted, and will, in some cases, control both course and distance. (McIver v. Walker, 4 Condensed Reports, 501; Blake *et al. v.* Doherty, 4 Condensed Reports, 682; Smith v. Power, 2 Texas Reports, 70; Welder v. Carroll, 29 Texas Reports, 317.)

In England the distinction is now clearly established, that hearsay, reputation, or tradition is not admissible in cases of a mere private right, but only in cases of a general, public, or *quasi* public, involving similar interests, in a large number of persons. (Ellicott v. Pearl, 10 Peters' Reports, page 412; 1 Phillips, Evidence, page 217, edition by Edwards in 1859.)

Some of the American courts have allowed private rights and particular facts, under certain limits, to be proved by hearsay evidence. But this court, in a late case, seems inclined to come back to the English doctrine, for it says: "Where the "owner of the junior title did not attack the elder title for "over twenty years, and then the attack was not by record "evidence, but by parol, the objection should be considered "stale." (Barrett v. Kelley, 31 Texas Reports, page 476; Smith v. Johnson, 21 Texas Reports, 722; Stroud v. Springfield, 28 Texas Reports, is *obiter dicta*.) But the necessity that lets in hearsay evidence did not arise in this case, as Mr. Richardson, who surveyed the land, was still living and was a witness for defendants. The hearsay as to the corner should not have been admitted to go to the jury, as there was better evidence within reach of the defendants.

This corner was connected by course and distance to the mouth of the lagoon, and parol testimony was incompetent to prove that this was at another and different place. (Anderson v. Stamps, 19 Texas Reports, page 460; Polks v. Hill & Wendell, 2 Overton, 118.)

The general principle is that evidence *dehors* the grant,

cannot be received ·to impeach it. (Polk's Lessees v. Hill & Wendell, 2 Overton Reports, 118; McCoy's Lessees v. Galloway, 3 Hammond, 282.)

WALKER, J. Some controversy is found in the briefs as to the real nature and character of this suit. By the appellants it is claimed that the action is merely one of trespass vi et armis, and that in such an action the defendants are attempting, without the necessary pleadings and averments, to impeach and cancel the plaintiff's patent. If this were really the case, we should not hesitate to hold with the numerous authorities cited, that the patent could not be so impeached, and that a patent legally issued by the sovereign power of the Government, and duly recorded, could not be collaterally impeached and canceled; but, although the pleadings are somewhat peculiar, and the petition is not in strict conformity with the usual form of petition, yet, we are of opinion that the main question sought to be tried and settled, may be reached under the pleadings in the case.

Smith brought his action against Russell and others, occupying tenants; Williamson and wife intervene and defend the action. Several questions raised in the pleadings are, as if by mutual consent, abandoned, and the controversy is narrowed down to an inquiry as to the true boundary line between the Maxey half-league grant, owned by Smith, and the sectional surveys, owned by Mrs. Williamson. The Maxey survey is dated May 10th, 1839, the patent issued February 20th, 1851. The Williamson surveys are dated May 10th and 29th, and all the sections are patented from one to three days before the Maxey patent issued.

The true location of the south-east corner of the Maxey survey determines this controversy, and to this point the attention both of the court and jury below appears to have been directed. The sectional surveys and patents call for the Maxey line and abut upon it. The line runs due north from the south-east corner of the Maxey survey, wherever that may be. Between the boundary lines as claimed by the opposing

parties, there would be a surplus of full six hundred acres of land, and, as near as we can gather from the maps, it would lie in a form nearly six hundred varas in width, and about six thousand varas in length. It appears that each party has been in possession of a part of this land, and it might have been better for them both, if not for the State, if they could have divided it peaceably among themselves.

Accordingly as the south-east corner of the Maxey survey is located, must this land fall to one or the other of the parties. If courts were allowed to sympathize with litigants, we should find no very loud demand upon our sympathy for either party in this suit. Williamson contends that the disputed corner was located, by the original survey, at a certain mot or cluster of bushes. The appellants claim that the court below erred in permitting Williamson to prove a mistake in the Maxey patent, in one of the calls for distance, which is the first call in the line on the bay shore, and that this call in the patent differs some nine hundred and fifty varas from the call in the original field-notes on file in the General Land Office. The defendants were permitted to offer in evidence a certified photographic copy of the original field-notes. By this copy the length of the line is one hundred and five and five-tenths ($105\frac{5}{10}$) varas in length; while the Maxey patent calls for a line one thousand and fifty-five varas in length.

The defendants were also permitted to prove that upon the theory of the shorter line being the true line, the Maxey patent would give the plaintiff the true and full quantity of land called for in the grant; that its form would be of equal length in front and rear, and that the other surveys, made about the same time, by the same surveyor, would harmonize in form and quantity; but, conceding the call in the Maxey patent for one thousand and fifty-five varas to be correct, then the survey of the Maxey grant would be nine hundred and fifty varas wider on the one end than on the other, and would contain an excess of six or eight hundred acres of land more than the patent calls for, and that upon this theory the abutting surveys would

run into the marshes and deep waters of the bay. They also offered evidence to prove that by taking $105\frac{5}{10}$ varas to be the true measurement of the line, the southeast corner would be so located that the courses and distances called for in the Maxey patent itself would harmonize, and that the corner would then be at the mot of young timber. The court also permitted the defendants to prove that one of the original chain-carriers, who was dead at the time of the trial, had pointed out to the witness the mot of young timber as the place of the corner. The defendants also offered evidence to prove that the plaintiff himself, in 1857 or 1858, had recognized the corner at the mot of young timber, and that from that corner he and Williamson had run a line due north, for the purpose of fixing the boundary or dividing line between their lands.

To all this evidence the plaintiff objected, contending that the calls of the Maxey patent for courses and distances must govern, and that no mistake could be shown to vary or contradict those calls. The court overruled the exceptions, admitting the evidence; and these several rulings are assigned as errors. A motion for a new trial was overruled, and the cause is appealed to this court.

In the case of Urquhart v. Burleson, 6 Texas R., 502, 512, and 513; in Dalby v. Booth, 16 Texas R., 565, 566; and in Bolton v. Lann, 16 Texas R., 112, as well as in subsequent cases, most of these questions have been settled. The authorities are too numerous and familiar to the profession to require citation.

It is a well-settled rule of law that where natural or well-known artificial monuments or objects are called for in a deed or patent, the calls for course and distance, if inconsistent with them, must be disregarded; and that monuments and lines marked upon the ground may be identified by parol evidence. Even the common understanding of the surrounding community may be proved as to the identity of such monuments and lines, and the declarations of deceased witnesses may be proved, to fix the location of corners and lines. (See Stroud v. Spring-

field, 28 Texas, 665; Welder v. Carroll, 29 Texas, 332, and authorities cited; and subsequent cases.)

It was also competent to prove that the plaintiff himself had recognized the corner pointed out by the deceased chain-carrier to the witness Egery, showing it to Williamson as the true corner. Many authorities might be cited, holding that Smith and Williamson would both be bound and concluded by a line mutually recognized and established, though it were not the true original line. (See George v. Thomas, 16 Texas, 89; Dalby v. Booth, 16 Texas, 566; Stuart v. Baker, 17 Texas, 417; Hoxey v. Clay, 20 Texas, 586, and subsequent cases.)

An objection to the whole of the survey, where a part of it is admitted in evidence, is not well taken. To admit that portion of the survey which agreed with the calls in the Maxey patent, gave the defendants the right, for the purpose of contradicting or explaining the patent, to introduce the whole survey.

We are unable to discover any material error in the rulings of the court; and the verdict of the jury seems to us to be well supported by the evidence. The argument which claims that there has been fraudulent and criminal tampering with the original field-notes of the Maxey survey, in the General Land Office, is too bold and incautious, unless better supported by evidence.

Under the view we have thus taken of this case, the judgment of the District Court is affirmed.

Affirmed.