### L. W. Cooper v. Wm. Austin.

(Case No. 1536.)

1. BOUNDARY — COMPROMISE LINE.— In a suit between parties involving a question of boundary, it was shown that after different surveyors had disagreed as to the true locality of the dividing line, the parties agreed themselves on a line which should be the dividing line between their adjacent lands, and one of them afterwards built his fence and constructed his houses with reference to that agreed line as the true boundary. *Held,*

(1) The fact that one of the parties would not have assented to the agreed line but for the belief that it was the true line, and, discovering his error, attempted to repudiate the agreement, afforded no ground for his relief; he was bound by the agreed line.

(2) The validity of an agreement for the settlement of a boundary does not depend on the accuracy with which the line is run.

(3) Whether the parties were right or wrong in locating the agreed line properly was immaterial, if there was doubt or dispute as to its correct location on the ground, and they settled that agreement by a compromise line.

(4) Time and long acquiescence are not necessary to the validity of a parol agreement fixing a compromise line between adjacent surveys.

(5) When the parties have acted with entire good faith, a court of equity will not disturb such compromise line on the ground of mistake of fact. The rule which enforces such agreements rests on the soundest principles of public policy and justice.

(6) Coleman v. Smith, 55 Tex., 259; Hoxie v. Clay, 20 Tex., 536, and George v. Thomas, 16 Tex., 89, discussed and approved.

(7) The special issues found by the jury having ascertained all the facts necessary to a final decision of the case, the judgment below was reversed, with instructions to the district court to take such steps as might be necessary to have described and defined on the ground the dividing line which the parties had agreed on, and to enter a judgment establishing that line.

APPEAL from Houston. Tried below before the Hon. John R. Kennard.

The opinion states the case.

*J. R. Burnett,* for appellant.

*Nunn, Williams & Corry*, for appellee.

I. The verdict determined all the facts essential to a judgment for plaintiff, and entitled him to such judgment, unless there was an express finding of such an agreement as would divest him of his right or preclude him from asserting it. Defendant neither asked for the submission of any other issue or for the enlargement of those submitted. He did not in any way except to the questions submitted by the court or to the answers of the jury, or ask that the verdict be made fuller.

II. The agreement found by the jury was not one having for its subject the land in controversy, which was not then in the contemplation of the parties, but, construed in the light afforded by defendant's plea, the charge and the evidence, was merely an acquiescence in a survey supposed by both to include all the land which plaintiff owned. It could not, therefore, have the effect of a divestiture of title, which neither party intended. 1 Parsons on Contracts, p. 475; 2 Story on Contracts, § 641; Nash *v.* Towne, 5 Wall., 699.

III. The special charge was proper and necessary to prevent the misleading of the jury, by the general charge, into the belief that they were required under the law to accept the axe concerning which Corley testified as an authentic mark designating the corner, and such charge·directed the minds of the jury to the proper mode of determining the question under all the evidence. Bass *v.* Mitchell, 22 Tex., 285; Castleman *v.* Ponton, 55 Tex., 88; Bagley *v.* Morrill, 13 Am. Law Reg. (N. S.), p. 708.

IV. That the verdict cannot be construed as fixing the northwest corner of Corley's tract as one of the corners of the two acres to be surveyed for appellee, but only as a beginning point from which a correct survey might be made, and in this it is amply supported by the evidence. The evidence of both Broxson and Duren was to the effect that this corner of Corley's was an established and recognized point from which the survey could be correctly made. The survey as made by the commissioners and surveyor demonstrated this. As to the testimony about the axe corner, see foregoing statement. The jury, by their verdict, in effect found Broxson's survey to be correct.

V. Appellant should have made his complaint that the verdict, in not finding that the axe was at the corner or initial point, is contrary to the evidence, a ground in his motion for new trial.

VI. Our first proposition, which we make a reply to the sixth and seventh assignments also, is that the verdict being sufficient to establish all material facts to warrant judgment for plaintiff for his

proper quantity of land, the court could properly appoint commissioners to carry into effect its decree and to so adjust equities arising out of improvements as to do justice to both parties; and could properly charge the expense as costs.

WEST, ASSOCIATE JUSTICE.— This was an action brought by appellee to establish and fix the boundary line, and to recover of appellant a small part of two acres of land that appellee held by derivative title from A. Voltair and wife, who had in April, 1872, donated the land to the Houston & Great Northern Railroad.

Appellee bought this land probably in December, 1880, though his deed is dated on the 28th day of February, 1881, and previous to the date of this deed, on the 11th of February, 1881, one B. F. Duren had purchased by metes and bounds one-tenth of an acre, being a part of, and in the extreme southern part of this Voltair two-acre tract. The locality of this portion of the two acres owned by B. F. Duren was fixed and determined between Duren and appellee, the sole owners of the said two acres, and was not in dispute, and Duren's part was not contiguous to the land of appellant. Appellee took possession of the part of the two acres that had been set apart to him as between him and Duren, as the record disclosed, in December, 1880, which appears to be before the date of his deed. Duren was also in some manner in possession of his part of the two acres, as may be fairly gathered from the testimony of the witnesses and the plots in evidence.

The suit relates to these two acres as constituting a part of a tract of six and one-half acres formerly owned by A. Voltair and wife, and which adjoins the Page, the J. B. Smith and the Elam or Monroe tracts. Some time between 1860 and 1866, Voltair purchased of one Matlock, and Charles Stokes made a survey for them, and then established on the ground at that time a corner of the Matlock and Voltair survey. Corley, a witness who was present when Stokes made the survey, and who shortly afterwards owned a part of the land adjoining, buried an axe in the presence of Stokes, at that point where Stokes established this corner. The surveyor Duren commenced his work at this axe corner, as the initial point of the Voltair tract, or at least as a known and marked corner. The surveyor Broxson, in making his survey, commenced at another point about fifteen or sixteen varas south from the axe corner, where Duren began. Appellee contends that the point where Broxson commenced was the true and proper point at which to commence the survey. Appellant contends that the axe corner where Duren

commenced, and which could be found by reference to a hickory bearing tree called for, was the proper point of beginning; but even if it was not, the appellant contended that both parties after Duren's survey had agreed upon a boundary line, and in consequence of this agreement and as a result of it, appellant had built his house and dug his well and put up his fence with reference to that agreement, and that this agreed line must now stand, whether it be in fact the true line or not.

In April, 1881, appellant became the owner of the balance of the Voltair tract, from which the two acres owned by appellee and Duren had been taken. Shortly after appellee purchased, and probably in November or December, 1880, B. F. Duren, who, as has been said, was the owner of a part of the two-acre tract in controversy, and who was also the county surveyor, made a survey of the said two-acre tract, at the request of appellee, for the purpose of ascertaining and fixing its true boundaries and location on the ground in reference to the lands of the adjoining proprietors.

Afterwards, at the request of appellant, Duren made another survey of the same tract, and again fixed its boundaries substantially, but not exactly, where he had fixed them by his first survey for appellee.

Shortly after his purchase, appellant, as the owner of the balance of the Voltair tract, desired to build a division fence between himself and the appellee. The evidence shows that they had some conversation on the subject, and finally agreed upon a line which should be the division line between them. The agreement was fully set out by appellant in his answer, and is as follows: "That a controversy arose between them as to said division lines, and, in order to determine them correctly, several surveys had been made, some running into the land claimed by plaintiff, and some running into the land of defendant, and in order to settle the said boundaries and dividing lines, plaintiff and defendant mutually agreed on the line on which there is now standing a plank and wire fence erected by defendant. That in fact one of said surveys ran further south by several feet, but each survey being variant, the said parties, in order to avoid any litigation and further dispute as to the exact boundaries, agreed on said lines, as above stated. That this agreement was made on or about the —— day of June, 1881, and relying on the same, and thereby induced, defendant in good faith erected said wire and plank fence at his own expense, and which is reasonably worth, to wit, $75; and also erected on the land now claimed by plaintiff to be in conflict, a dwelling house reasonably worth

$150, and dug a well thereon worth $30. That all said improvements are valuable and permanent, and were erected on said land during the summer of 1881, and upon the faith of and were induced by said settlement of said boundaries. That plaintiff well knew said improvements were being erected, he then residing on the adjoining land claimed by him, and knew that said fence was erected as the dividing line, as agreed on, and he never in any manner objected to the same."

The fence so agreed to be built by appellant was on a line quite as favorable, if not a little more so, to appellee than one built exactly along the entire line as ascertained by Duren.

When the agreement was made and the fence built, it is conceded that both parties were then satisfied with the line. Neither party knew then whether it was the true boundary line or not of the two-acre tract. The appellee no doubt believed it to be near the true line, and the appellant knew nothing definite on the subject, and from the evidence agreed to it because it was acceptable to appellee. It ran on a part of what was supposed by both of them at that time to be the land of appellant, and he states in his evidence that he only wanted the line fixed, and if it had been ten feet on his land, instead of two or three, he would have as readily accepted it. It was agreed to, and appellant expressed himself gratified at its establishment and remained contented with it, recognizing and respecting it for some time, and until shortly before the suit was brought, when he sold a part of the said two-acre tract to his brother-in-law, and who declined to pay for his purchase until its actual locality was determined.

This necessitated a resurvey of the land. It was then ascertained by Broxson, another surveyor, that the corner at which Duren had each time commenced his survey, known as the axe corner, when he ran off the two-acre tract, was not the true beginning corner according to Broxson's view. But that the true corner where he, Broxson, began, was really about fifteen or sixteen varas south from that point; and commencing at this supposed true corner as ascertained by the surveyor Broxson, and locating the two-acre tract with his new boundary lines, it would result that appellant had under his fence about one-fourth of an acre or less of appellee's two-acre tract. This last survey of Broxson took in appellant's fence, his well, and nearly all of his house.

There was some conflict of evidence as to whether the point contended for by appellant, or that contended for by appellee, was in fact the true corner made by the surveyor who originally surveyed

the land for Voltair.  This original survey was made by Stokes be-
tween 1860 and 1865; he was not on the stand, nor was any wit-
ness examined as to where, as an actual matter of fact, Stokes did
carry his compass or stretch his chain, though Corley swore he was
present when Stokes made the survey, and that he established the
true corner at the point where Duren commenced his work.

The lines run by Stokes, if they could be ascertained, would be
the true boundary lines of the entire Voltair tract.  They may in
fact have been different from either of the two lines run by Duren
or the lines run by Broxson.  It would seem from the evidence that
the two surveys made by Duren differed somewhat from each other,
and the survey made by Broxson, before the suit for appellant,
differed from the surveys made by Duren.  The record also fur-
nishes evidence that the line last run by Broxson in accordance
with the verdict in this case, under the order of the court, differed
from the line run by him before the verdict; for his first line placed
on the end of appellee part of appellant's house, his well, and fence.
His last survey still gave appellee his full complement of two acres,
and left on appellant's land the house and well, and all but fifty
panels of his fence, and so the judgment below was finally entered.

So that it seems of the four lines run by Duren and Broxson, no
two are precisely alike.  They may all in fact be different from the
true and real lines as actually run on the ground by Charles Stokes
when he marked the exact locality of the Voltair and Matlock tract.
It may be that all the lines were never in fact actually run by
Stokes, but Corley says that he established one corner which appel-
lant claims as the true corner.

At all events, upon the appellee being informed that, according to
Broxson's survey, appellant was in possession of about one-fourth of
an acre of the land he had purchased, he notified him to surrender
possession, and on his refusal brought this suit, in which, on the
trial, the facts were developed in substance as above stated.

The judge submitted in a very clear charge eight special issues to
the jury, and in obedience to his instructions they returned an intel-
ligent, and in the main a satisfactory and correct response to all the
issues submitted.

On the subject as to the agreement between the parties as to the
boundary line which was set up by the appellant in his answer, the
court of its own accord instructed the jury as follows: " Fourth.
Did the plaintiff and defendant enter into a verbal agreement before
the defendant made improvements, if any, on the land in dispute,
fixing the dividing line between their respective lands on the Voltair

tract, whereon the defendant built a fence, the same claimed as his in his answer upon which the defendant was to build and keep up his fence; and if that was not the line agreed on, if any, state what and where, if any, the line agreed on was or is?"

At the instance of appellee, on the same subject, he gave the jury the following additional charge: "The plaintiff asks the court to charge the jury that in determining the issue submitted to them, whether the parties made an agreement fixing the boundary between them, the agreement, to affect plaintiff's right to a portion of his land which he did not receive, if any, must have been made for the purpose of fixing a disputed line between them, and a mere acquiescence in a line which both parties believed to be the true line, both parties being honestly mistaken as to such boundary, and such acquiescence being merely because the party to be affected believed it to be the true line, would not be such an agreement as referred to in the charge."

The verdict of the jury was as follows: "Fourth. Defendant built a few panels of fence on the land in dispute, after which an agreement was made between plaintiff and defendant to make the fence built by defendant the dividing line between them."

The jury also, in response to the issues, found the true and real boundary lines of the two-acre tract to be not as Duren but as Broxson found them.

Taken together, the charge of the court above given, qualified by the special instruction asked and given at the instance of the appellee, announced the rule of law that was in this respect to govern the jury, substantially to this effect: That though the agreement had been made and acted on, and appellant had placed his fence and made his other improvements with reference to such agreement between himself and appellee, yet such agreement would not be binding upon appellee, if appellee at the time believed the agreed line to be the true line, and would not have assented to it but for that belief, and that on subsequently discovering the error, he had to repudiate the agreement to have his line established where it rightfully should be.

We have examined the case with the usual care, and have been greatly aided in our investigation by the clear and satisfactory presentation of the issues by counsel on both sides. We have come to the conclusion that the rule laid down by the court as above set forth is not correct. It is not believed to be sustained by the previous decisions of this court in similar cases.

In Coleman v. Smith, 55 Tex., 259, which was a case of disputed

boundary, the court, speaking of the charge of the court, uses the following language: "This charge is not necessarily erroneous or misleading because the word mistake is not included expressly; in truth its use might rather have misled the jury than otherwise, by conveying the idea that if the line so agreed upon were not the true line, therefore other parties would not be bound by it. But the validity of an agreement for the settlement of a boundary does not depend at all upon the accuracy with which the line is run. Whether the parties were wrong or right in their belief that the line they established and agreed upon as the boundary of their lands was precisely where it ought to be, or where the original surveyor made it, was wholly immaterial. It was enough if there was doubt or dispute between them about it, and they determined to settle it upon that basis. If absolute exactness in defining the line were necessary to render such an agreement binding, it is not easy to perceive how it could be attained. Different surveyors with different instruments might locate the true line at different places. An agreement made to-day upon the survey of one might be set aside to-morrow upon that of another, perhaps no less skillful or accurate. This would be to make agreements nugatory, whereas they are to be encouraged, favored and upheld, especially in these cases of doubtful boundaries. Such cases are proverbially vexatious and breed ill blood, and they are very apt to arise in this country. It is notorious that surveys have been hitherto very loosely made, and often by incompetent surveyors. Lines have been insufficiently marked and corners designated by perishable objects. And the settling of the country, and the destroying axe of the settler, and time, have obliterated the path of the surveyor and destroyed the monuments he made. And so, when the lines he ran cannot now be run, and the boundaries he fixed have become of doubtful identity, and the parties to be affected by them have mutually agreed that here he fixed his lines and set their bounds, such agreement should be held conclusive, not subject to be set aside or reopened upon any subsequent discovery that possibly a mistake was made in that agreement as to the true locality. . . . The parties have put their fences up and acceded to it. . . . It ought to stand."

These conclusions, we believe, are sound and fairly deducible from the previous decisions of this court on this subject.

The facts in the case of Hoxie v. Clay, 20 Tex., 586, show that the agreement in that case between the two parties was of a very recent date. The suit was brought in September, 1854. The reporter, in his statement of the case, says that the appellant and

appellee purchased the west half of the Luke Lessassier league, the land whose boundary was in dispute, in February, 1854, and that an agreement as to boundary was made in the summer of 1854. The record there discloses the fact, that the element of time and long acquiescence was not considered by the court as being necessary to the validity of such parol agreement between neighbors and adjoining proprietors as to the boundaries of their land. The court held the agreement binding, without reference to the length of time that had elapsed since it was made.

The district judge in that case gave a charge not unlike the special instruction asked and given in behalf of the appellee in this case. It was to the effect: "That if the jury believed there was a mistake made as to the right of the parties running the division line and making the partition, none of the parties were estopped by reason of the agreement for the correction of the error as to the true boundary line." On the contrary, the court reversed the cause and say: "Under such circumstances, it is believed it will not be found that equity has afforded relief to a. party on the ground of mistake. Where the means of information are equally open to both parties, and where each is presumed to exercise his own skill, diligence and judgment in regard to all extrinsic circumstances, equity will not relieve. In like manner, where the fact is equally unknown to both parties, or where the fact is doubtful from its very nature, if the parties have acted with entire good faith (as cannot be doubted in this instance), a court of equity will not interpose to afford relief on the ground of a mistake of fact. 1 Story's Eq., secs. 149, 150. The means of information are alike accessible to all parties."

These cases seem to us to be decisive of the one at bar. The court erred in instructing the jury that the acquiescence and agreement of the appellee with the appellant as found by the jury in the line along which appellant built his fence, both parties being honestly mistaken as to the true dividing line, and appellee believing at that time that the line he agreed to was in fact the true line, was not binding on appellee.

Judge Wheeler, in the very well considered case of George v. Thomas, 16 Tex., 89, quotes with approval the opinion of the court in Brown v. Caldwell, 10 Serg. & Rawle, 114, to this effect: "These settlements of boundary are common, beneficial, approved and encouraged by courts, and ought not to be disturbed, though it was afterwards shown that they had been erroneously settled. Convenience, policy, necessity, justice, all unite in favor of supporting such an amicable settlement."

These authorities show that neither the fact of mistake, nor that the acquiescence in the agreement has been for a very brief period of time, vary the rule, which rests on the soundest principles of public policy and justice. Houston *v.* Sneed, 15 Tex., 307; Dalby *v.* Booth, 16 Tex., 566; Stuart *v.* Baker, 17 Tex., 420; Browning *v.* Atkinson, 46 Tex., 608. The case of McArthur *v.* Henry, 35 Tex., 801, though not binding as authority (Taylor *v.* Murphy, 50 Tex., 295; Peck *v.* San Antonio, 51 Tex., 490), may be considered in this connection. Smith *v.* Russell, 37 Tex., 255.

The special issues, so properly submitted by the court to the jury, embrace all the facts necessary for a final disposition of the case without another trial. In fact, there can hardly be said to be any difference between the parties as to the facts of the case, and believing it best that there should be no further trial of the cause, and an end be put to this litigation, the judgment below is reversed and the cause is remanded with directions to the district court below to take the steps necessary to have described and defined on the ground the dividing line that the parties agreed to, and which was ascertained by the verdict to be as set forth in defendant's answer, on which, in accordance with said agreement, the appellant had built his fence, and in reference to which he had made his other improvements, and to enter a judgment which will have the effect of establishing that line.

The costs of this appeal and of the court below, as well as the subsequent costs that will accrue in entering the judgment settling and determining the boundary line, are also adjudged to appellant against appellee.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.